IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAIED TADAYON, et al.              :

    v.                              :   Civil Action No. DKC 11-0062

SAUCON TECHNOLOGIES, INC.          :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this patent infringement case is a motion to dismiss for lack of personal jurisdiction filed by Defendant Saucon Technologies, Inc. (ECF No. 13). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted.

I. **Background**

The following facts are either undisputed or uncontroverted. Defendant Saucon Technologies, Inc. ("STI"), is a Pennsylvania corporation with its principal place of business in Bethlehem, Pennsylvania. Pursuant to a contract with Coach USA, Inc. ("Coach USA"), STI assembled and installed components of a wireless Internet system on board certain interstate passenger buses operated by Megabus Northeast, LLC ("Megabus"), a Coach USA subsidiary. Megabus provides service to cities

throughout the northeastern region of the United States, including Baltimore, Maryland.

The Megabus wireless system enables passengers on board equipped buses to connect portable electronic devices, such as laptop computers and smartphones, to the Internet free of charge. The Internet service itself is not provided by STI, but rather by AT&T Wireless through a separate contract with Coach USA and/or Megabus. STI does, however, "provide a domain network service [DNS] link in the Internet link provided by AT&T Wireless to the bus companies on a computer server located at its business location in Bethlehem, Pennsylvania." (ECF No. 13, Attach. 2, Decl. of William Bouffard, at ¶ 12).[1] The DNS server "receives a domain name request from the AT&T Wireless network connected to a bus passenger's computer or smartphone and translates the domain names from words/terms meaningful to humans into the numerical identifiers (IP addresses) associated with networking equipment on the Internet." (*Id.*). Through the DNS server, STI provides "certain filtering of objectionable content in accordance with an agree[ment as to] acceptable content with the bus companies before passing an acceptable request through the AT&T Wireless network for connection to the requested domain name address." (*Id.*). STI also maintains, *via*

---

[1] Mr. Bouffard is the chief financial officer and a vice president of STI. (ECF No. 13, Attach. 2, ¶ 1).

2

its own website, an interactive webpage setting forth the Megabus "Acceptable Use Policy" ("the AUP webpage"). Upon attempting to access the Internet, Megabus passengers are directed to the AUP webpage and must indicate their acceptance of the terms of service prior to being permitted Internet access. STI assembled the Megabus system in Pennsylvania, installed it on buses in New Jersey, and operates the DNS server and AUP webpage from its offices in Pennsylvania.

Plaintiffs Saied and Bijan Tadayon, both Maryland residents, are the assignees of U.S. Patent No. 7,031,657 ("the '657 Patent"), entitled "Safe Method and System for Mobile or Wireless Computing or Communication Devices." (ECF No. 1, Attach. 1). On May 27, 2010, Plaintiffs brought a patent infringement suit against, *inter alia*, Coach USA and Megabus in the United States District Court for the District of Columbia "based on their use of the [wireless Internet] System on their motorcoaches." (ECF No. 1, ¶ 14). That case eventually settled and was dismissed on January 3, 2011. (*Id*. at ¶ 15).

Four days later, Plaintiffs commenced the instant action by filing a *pro se* complaint alleging that STI infringed the '657 Patent by "making, installing and/or using, and/or inducing others to use, a system that come[s] within the scope of multiple claims." (ECF No. 1, ¶ 31). The complaint further alleges that "the Megabus WiFi services/systems installed by

3

[STI] which provide WiFi (wireless) zone within Megabus motorcoach[es], while providing data transmission through [a] cellular network, falls [with]in the scope of the '657 Patent." (*Id.* at ¶ 32). The complaint recites that the court's exercise of personal jurisdiction is appropriate because STI "has committed, induced, and/or contributed to the acts of patent infringement alleged in this [c]omplaint in this district." (*Id.* at ¶ 5).

STI filed the pending motion to dismiss on March 8, 2011. (ECF No. 13). Plaintiffs responded on March 25 (ECF No. 15), and STI filed reply papers shortly thereafter (ECF No. 16).

**II. Analysis**

STI moves to dismiss Plaintiffs' complaint for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). The determination as to whether a court may exercise personal jurisdiction in a patent infringement case is governed by Federal Circuit law. *See Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2009). In order to defeat a challenge to personal jurisdiction where, as here, the court's decision is based on "affidavits and other written materials in the absence of an evidentiary hearing," the plaintiff "need only make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). In conducting

4

its analysis, the court must "accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Coyle*, 340 at 1349.

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Avocent Huntsville Corp.*, 552 F.3d at 1329 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)) (internal quotation marks omitted). Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, has been interpreted as being coextensive with the constitutional limits of the due process clause. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002) (citing *Androutsos v. Fairfax Hosp.*, 323 Md. 634, 637 (1991)). This broad reach does not suggest that analysis under the long-arm statute is irrelevant; rather, it reflects that, "to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause." *Dring v. Sullivan*, 423 F.Supp.2d 540, 545 (D.Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F.Supp. 116, 118-19 n. 2 (D.Md. 1995)).

**A. The Maryland Long-Arm Statute**

The personal jurisdiction analysis begins with the language of the Maryland long-arm statute, which provides, in relevant part:

> (b) A court may exercise personal jurisdiction over a person, who directly or by agent:
>
> (1) Transacts any business or performs any character of work or service in the State; . . .
>
> (3) Contracts to supply goods, food, services, or manufactured products in the State; [or]
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). Plaintiffs rely on these three provisions to justify jurisdiction in this case. (ECF No. 15, Attach. 1, at 10-11).

Subsection (b)(1) allows a court to exercise personal jurisdiction over a defendant who "transacts any business or performs any character of work in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(1). A defendant need not be physically present in Maryland for this provision to apply, but

its actions must "culminate in purposeful activity within the State." *Bahn v. Chicago Motor Club Ins. Co.*, 98 Md.App. 559, 568 (1993) (quoting *Sleph v. Radtke*, 76 Md.App. 418, 427, *cert. denied*, 314 Md. 193 (1988)) (internal marks omitted).

In arguing that personal jurisdiction is proper under subsection (b)(1), Plaintiffs assert:

> [STI], actively and without any solicitation from passengers, has engaged each passenger user in Maryland who has attempted to access the Wi-Fi Zone aboard Megabus motorcoach[es] to agree to the terms of the usage of the Wi-Fi Zone through [] its admittedly interactive web page. Then, [STI] has continued its contact with the user to enforce the usage agreement by monitoring the users so that in the event the user breaches the agreement, [STI] would bar the Wi-Fi access to that user. Although [STI] performs this service as part of its commitment to Coach USA Inc. and its affiliate Megabus, [STI] nevertheless has been transacting with the passenger users in Maryland to provide Internet access via [the] Wi-Fi Zone while enforcing [the Acceptable Use Policy] agreement with the passenger users. Therefore, personal jurisdiction is proper under Md. Code Ann., Cts. & Jud. Proc[.] § 6-103(b)(1).

(ECF No. 15, Attach. 1, at 10-11). Thus, according to Plaintiffs, the alleged infringing conduct occurs whenever passengers aboard equipped Megabus motor coaches either access or attempt to access the Internet while travelling through the State of Maryland, *i.e.*, when they are presented with the AUP webpage and/or subject to content filtering through STI's DNS

7

server. Plaintiffs estimate that this has resulted in "thousands of infringing contacts in Maryland during the past 3 years." (*Id.* at 4).

These contacts, however, do not constitute "transacting business" in Maryland. Indeed, the uncontroverted evidence reflects that the only business transacted in this case was between STI and Coach USA, pursuant to their contract, or possibly between Coach USA and/or Megabus and their passengers, related to acceptance of the Megabus Acceptable Use Policy.[2] To the extent there was any contact between Megabus passengers travelling through Maryland and STI, it was initiated by the passengers attempting to use the Internet, not STI. Moreover, there is no charge associated with Internet access for Megabus passengers. Nor is there any indication that STI solicits any business for itself, be it through the AUP webpage or otherwise, much less that it targets Maryland residents with such solicitation. Furthermore, the DNS server, through which STI performs its content filtering function, is located in Pennsylvania and the Megabus system was installed in New Jersey. (ECF No. 13, Attach. 2, at ¶¶ 10, 12). Thus, the work or

---

[2] According to the complaint, Coach USA is a Delaware corporation with its principal place of business in Paramus, New Jersey. (ECF No. 1, ¶ 12). There is no indication that the contract between Coach USA and STI has any relation to the State of Maryland.

8

services associated with the allegedly infringing conduct has occurred exclusively outside the State of Maryland.

Judge Williams considered somewhat analogous facts in the context of a patent infringement case in *Technology Patents, LLC v. Deutsche Telekom AG*, 573 F.Supp.2d 903 (D.Md. 2008). There, the plaintiff alleged, *inter alia*, that the defendant foreign telecommunications companies were subject to personal jurisdiction under subsection (b)(1) because "their networks [were] used to send and receive international text messages to and from Maryland, as well as through their agreements with U.S. telecoms." *Technology Patents*, 573 F.Supp.2d at 911. The defendants asserted that the court's exercise of personal jurisdiction was improper because "none of them transact business in Maryland and cannot provide wireless services outside their home country . . . [and] they do not target Maryland residents, as their products, services, and websites are directed only to residents in their home countries, and not Maryland." *Id*. The court agreed with the defendants, reasoning as follows:

> [I]t cannot be said that [the defendants'] actions have constituted "purposeful activity" in Maryland to be considered "transacting business." The fact that the foreign Defendants cannot provide any wireless services in Maryland or sell their products to Maryland residents, which is essential in constituting "purposeful activity," weighs strongly against finding

9

> that they transact business in Maryland. *See Prince* [*v. Illien Adoptions Intern., Ltd.*, 806 F.Supp. 1225, 1229 (D.Md. 1992)]; *see also Layton v. AAMCO Transmissions, Inc.*, 717 F.Supp. 368, 370 (D.Md. 1989) (the express statutory language of subsection (b)(1) "require[s] the performance of acts *within* the state" and therefore, cannot confer jurisdiction based on acts outside Maryland, even if the "effects" of those acts are felt within Maryland) (emphasis added).
>
> It appears to the Court that the actual transmission of the text messages does not result from the "purposeful activity" of the foreign Defendants, but rather the deliberate intention of the foreign Defendants' subscribers in his or her desire to send a text message to someone in Maryland. Because Plaintiff has not directed the Court to any purposeful act that the foreign Defendants have engaged in within the state of Maryland, jurisdiction under subsection (b)(1) cannot lie over the foreign Defendants. *See Talegen Corp. v. Signet Leasing & Fin. Corp.*, 104 Md.App. 663, 657 A.2d 406, 409, and n. 3 (Md. 1995) (reiterating that a plaintiff must show "some *purposeful act* in Maryland in relation to one or more of the elements of plaintiff's cause of action") (emphasis added).

*Technology Patents*, 573 F.Supp.2d at 911 (footnote omitted).

Similarly, STI does not provide the wireless service that appears to result in the alleged infringement. It does not sell its products in Maryland or solicit the business of Maryland residents. Moreover, the conduct giving rise to Plaintiffs' cause of action occurred exclusively outside of this state and any contacts between STI and Megabus passengers travelling

10

through Maryland were initiated by the passengers. Under these circumstances, it cannot be said that STI has engaged in conduct designed to "culminate in purposeful activity within the State." *Bahn*, 98 Md.App. at 568. Accordingly, subsection (b)(1) of the Maryland long-arm statute does not confer personal jurisdiction.

Nor could jurisdiction be proper under subsection (b)(3), which applies where the defendant is alleged to have "[c]aused tortious injury in the State by an act or omission in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3). Although the alleged injury in this case occurred in Maryland, the acts alleged to have caused it occurred in Pennsylvania and/or New Jersey. Because the alleged tortious acts occurred outside of Maryland, subsection (b)(3) cannot apply. *See Dring*, 423 F.Supp.2d at 546 ("[c]ourts have held that this subsection requires that both the tortious injury and the tortious act must have occurred in Maryland"); *Layton*, 717 F.Supp. at 370 ("the express statutory language does not permit application of the so-called 'effects' test").

Pursuant to subsection (b)(4), a court may exercise personal jurisdiction where a tortious injury is caused in-state by "an act or omission outside the State," but only where the defendant "regularly does or solicits business" or otherwise "engages in any persistent course of conduct in the State." Here, the declaration of STI chief financial officer William

Bouffard reflects that STI does not "transact any business or perform any character of work or service in the State of Maryland, nor does it contract to supply goods, services, or manufactured products in the State of Maryland." (ECF No. 13, Attach. 2, at ¶ 5). Moreover, STI does not "solicit business within the State . . . and does not derive substantial revenue from goods, services, or manufactured products used or consumed" in this state. (*Id*. at ¶ 6). Plaintiffs have presented no evidence challenging Mr. Bouffard's declaration; nevertheless, they urge that personal jurisdiction is proper under subsection (b)(4) because STI "has persistently engaged thousands of Baltimore passengers in Maryland" who attempt to access the Internet *via* the Megabus wireless system. (ECF No. 15, Attach. 1, at 11). Thus, according to Plaintiffs, the specific contacts giving rise to the instant cause of action also serve as a basis for the court's exercise of general jurisdiction.[3] Because those

---

[3] Subsection (b)(4) is Maryland's general jurisdiction statute. *See Technology Patents*, 573 F.Supp.2d at 912 n. 11. "The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general personal jurisdiction" over the defendant. *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D.Md. 2004). Specific personal jurisdiction applies where a controversy is "related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). A court may exercise general jurisdiction, by contrast, where a defendant maintains "continuous and systematic" contact with the forum state.

contacts have been found insufficient to convey specific jurisdiction under subsection (b)(1), however, they are necessarily insufficient to establish general jurisdiction under subsection (b)(4).

**B. Due Process**

Even assuming that one of the provisions of the Maryland long-arm statute did apply, the exercise of personal jurisdiction over STI would not comport with the requirements of constitutional due process.

The relevant question in the due process analysis is whether the defendant has established "minimum contacts" with Maryland such that maintenance of the suit here does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts must be based on "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In this analysis, the court must assess whether STI's contact with Maryland is substantial enough that it "should reasonably

---

*Helicopteros*, 466 U.S. at 415 (quoting *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438 (1952)).

anticipate being haled into court [here]." *World-Wide Volkswagen Corp. v. Woodsen*, 444 U.S. 286, 297 (1980).

The Federal Circuit has distilled these somewhat abstract concepts into three basic prongs: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003) (quoting *Inamed Corp.*, 249 F.3d at 1360). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* due process analysis, and the third factor corresponds with the 'fair play and substantial justice' prong." *Shamsuddin v. Vitamin Research Products*, 346 F.Supp.2d 804, 807-08 (D.Md. 2004) (citing *Inamed Corp.*, 249 F.3d at 1360)). The burden is on the plaintiff to establish "minimum contacts" under the first two prongs, but then switches to the defendant "to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable." *Inamed*, 249 F.3d at 1360 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995)).

Plaintiffs argue that the exercise of personal jurisdiction in this case would be consistent with due process requirements because STI has "actively directed electronic activity into

14

Maryland" by "presenting an unsolicit[ed] interactive web page to the [Megabus] passenger user[s]" and "demonstrated its intent to engage and interact with . . . users within Maryland by . . . obtaining the user acceptance of the terms of use of [the] Wi-Fi Zone via its interactive web page, and engaging in monitoring and enforcing [of] the agreement." (ECF No. 15, Attach. 1, at 12). In support of their argument, Plaintiffs rely on *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa. 1997), a watershed case setting forth a sliding scale approach to analyzing personal jurisdiction in the context of the Internet. Plaintiffs observe that the AUP webpage involves a certain degree of interactivity between STI and the users, as does STI's content filtering function, and argue that these contacts pass constitutional muster under the *Zippo* test.

While the approach set forth in *Zippo* has been adopted in varying degrees by a number of courts, the Federal Circuit is not among them. *See Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (briefly discussing, but not adopting, the *Zippo* standard). Even if the test were to apply, however, the outcome would clearly be unfavorable to Plaintiffs. The *Zippo* court explained its "sliding scale" for defining when electronic contacts with a state are sufficient as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *E.g. CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996). At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. *E.g. Bensusan Restaurant Corp.[] v. King*, 937 F.Supp. 295 (S.D.N.Y. 1996). The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*, 947 F.Supp. 1328 (E.D.Mo. 1996).

*Zippo Mfg. Co.*, 952 F.Supp. at 1124.

Here, the AUP webpage is interactive. Passengers attempting to access the Internet encounter the webpage, which requires them to click a link indicating their acceptance of Megabus' Acceptable Use Policy. The webpage also contains a separate link, labeled "Feedback," that permits the user to send email directly to STI. (ECF No. 15, Attach. 2, Decl. of Saied Tadayon, at ¶ 3). Moreover, once passengers gain access to the Internet, they interact with STI's DNS server every time they attempt to visit a different website. The "commercial nature of

16

the exchange of information that occurs" between STI and Megabus passengers, however, is non-existent. By accepting the Acceptable Use Policy, the passenger enters into an agreement with Coach USA and/or Megabus, not STI. (ECF No. 15, Attach. 3, AUP webpage, at 2 (limiting liability and reserving rights for "Megabus")). As noted previously, STI does not derive revenue from Megabus passengers, nor does it solicit business for itself in any way through these contacts. In fact, the AUP webpage and content filtering service are provided by STI pursuant to its contract with Coach USA, which Plaintiffs have separately sued in another court, apparently based on the same contacts. As Judge Williams noted in *Technology Patents*, 573 F.Supp.2d at 914, under Federal Circuit law, "personal jurisdiction cannot be based on the fact that a defendant contracts or does business with a company that has sufficient contacts with the forum state." *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("doing business with a company that does business in [the forum state] is not the same as doing business in [the forum state]"). Indeed, if that were not the case, STI would likely be subject to personal jurisdiction in every state through which equipped Megabus motor coaches travel. Under these circumstances, the interactive website and content filtering services are insufficient to confer personal jurisdiction over STI in Maryland. *See*

*Shamsuddin*, 346 F.Supp.2d at 813 (finding in patent infringement case that "[t]wo sales to Maryland residents and maintenance of a commercial website do not rise to the level of contacts of such 'quality and nature' that the exercise of personal jurisdiction . . . would comport with due process"); *Am. Info. Corp. v. Am. Infometrics, Inc.*, 139 F.Supp.2d 696, 699 n. 6 (D.Md. 2001) ("Because no Maryland residents are customers of [the defendant], the [web]site's interactive features that are available to customers are not relevant to the minimum-contacts inquiry").

In sum, Plaintiffs have failed to show that STI has purposefully availed itself of the privilege of conducting business in Maryland. Because the minimum contacts prong of the constitutional analysis is not satisfied, the court will not consider the reasonableness prong.

### III. Conclusion

For the foregoing reasons, STI's motion to dismiss will be granted. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge